**Wiley and Carol McMANUS, Individually as Next Friends of Glen McManus**

v.

**TRAVELERS HEALTH NETWORK OF TEXAS, et al.**

**Civ. No. A–89–CA–918.**

United States District Court,
W.D. Texas,
Austin Division.

March 9, 1990.

Jerry Galow, Kidd, Whitehurst, Harkness & Watson, Austin, Tex., for plaintiffs.

Michael R. Buchanan, Paula Denney, Strasburger & Price, Dallas, Tex., for defendants.

## ORDER

NOWLIN, District Judge.

Before the Court are Plaintiffs' Motion to Amend Petition, Plaintiffs' Motion to Remand and Defendants' Motion to Dismiss and in the alternative to Compel Arbitration. The Court has considered each of the pending motions and their accompanying briefs, as well as all responsive pleadings and is of the following opinion.

Plaintiffs seek benefits allegedly due under an employee benefit plan maintained by Wiley McManus' employer, Lockheed Missiles and Space Co., Inc. ("Lockheed"). The Lockheed plan provides its eligible employees and their beneficiaries with medical, surgical and hospital benefits, through either the self-insured Lockheed medical benefit plan or three separate HMO's. Plaintiffs' Original Complaint alleges common law theories of recovery for breach of the implied duty of good faith and fair dealing, fraud and negligent/intentional infliction of emotional distress. Defendants have filed a Motion to Dismiss based on the claim that Plaintiffs' causes of action are preempted by the Employee Retirement and Income Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

## I. PLAINTIFFS' MOTION TO AMEND PETITION

Plaintiffs seek to amend their original complaint to add statutory causes of action under Texas Insurance Code Articles 21.21, 20A.14(a), (b), 20A.11, and the Texas Business and Commerce Code § 17.50(a)(4)("DTPA"). Because Defendants' Motion to Dismiss deals with the preemption of these causes of action, the Court will grant the Motion to Amend and resolve the preemption issue in its ruling on the Motion to Dismiss.

## II.  MOTION TO REMAND

■ The basis of Plaintiffs' Motion to Remand is unclear.  However, as set forth in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), jurisdiction is proper in this case because even though Plaintiffs purport to raise only state law claims, those claims are recharacterized into actions arising under federal law by the ERISA civil enforcement scheme.

## III.  DEFENDANTS' MOTION TO DISMISS

■ Plaintiffs' First Amended Complaint alleges that the Defendants' failure to pay Plaintiffs' claim constituted a breach of the duty of good faith and fair dealing under Texas common law, and is also actionable under Texas Insurance Code Articles 21.21, 20A.14(a), (b), 20A.11, and the Texas Business and Commerce Code § 17.50(a)(4)("DTPA").  The Defendants argue in their Motion to Dismiss that Plaintiffs' causes of action are preempted by the terms of ERISA.

ERISA provides that the rights, regulations and remedies created by the statute "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  The Supreme Court in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) held that the preemption provision of ERISA is "expansive," *id.* 107 S.Ct. at 1552, and that "ERISA's civil enforcement remedies were intended to be exclusive," in order to prevent the remedies available to ERISA beneficiaries from being "supplemented or supplanted by varying state laws."  *Id.* at 1557–58.

An important exception to the preemptive scope of ERISA is found in 29 U.S.C. § 1144(b), commonly referred to as the "savings clause."  The savings clause states that ERISA shall not be construed "to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities."  28 U.S.C. § 1144(b).

Plaintiffs do not dispute that the plan under which Wiley McManus was insured was an "employee benefit plan" as defined in ERISA, 29 U.S.C. § 1002(1), nor do they dispute that their claims "relate to" the employee benefit plan.  Plaintiffs argue that their claims are not preempted by ERISA because these claims are based on laws which specifically regulate insurance, thus coming within the ERISA savings clause.

Where Plaintiffs' common law claims are concerned, the weight of authority is contrary to Plaintiffs' position.  The Supreme Court in *Pilot Life* held that a common sense understanding of the phrase "regulates insurance" requires that a law be "specifically directed" toward the insurance industry.  107 S.Ct. at 1554.  The Court held that the Mississippi common law claim of bad faith did not regulate insurance because "[e]ven though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi contract law."  107 S.Ct. at 1554.  Therefore, the Court held, the law was not "specifically directed" toward the insurance industry.

The common law doctrine relied on by Plaintiffs, imposing on insurers a duty of good faith and fair dealing in insurance contracts, is similar to the Mississippi common law that was held preempted in *Pilot Life.*  Although the law is identified with the insurance industry, it arises out of common law contractual and fiduciary principles established in Texas.  *See Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165 (Tex.1987); *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 212 (Tex.1988) (quoting *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947)) ("It is well established under Texas law that accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness ... and a negligent failure to observe any of these conditions is a tort as well as a breach of contract.").

The Fifth Circuit similarly held in *Light v. Blue Cross & Blue Shield of Alabama, Inc.*, 790 F.2d 1247 (5th Cir.1986) that ERISA preempts state common law claims including claims for bad faith refusal to pay claims. *See also Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir.1988) (ERISA preempts common law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud). The Court, therefore, holds that Plaintiffs' common law claims are preempted by ERISA.

■ With respect to article 21.21, the Fifth Circuit has recently held that causes of action brought under that statute do not fall within the savings clause of ERISA and are, therefore, preempted. *See Ramirez v. Inter–Continental Hotels*, 890 F.2d 760 (5th Cir.1989). Where the Texas DTPA is concerned, neither the Fifth Circuit nor the Supreme Court have expressly dealt with whether that statute falls with the savings clause of ERISA [1].

The Court will first review the status of the law respecting the applicability of the savings clause generally. The Supreme Court in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), used two methods of interpretation in determining whether a state law falls within the savings clause. First, the Court used a "common sense view" of the language of the saving clause itself. *Id.* 105 S.Ct. at 2390. Second, the Court looked at the case law interpreting the phrase "business of insurance" as it is used in the McCarran–Ferguson Act.[2] The Court in *Pilot Life* used these same interpretational tools and added a third, that being the intent of Congress as evidenced by the objectives and policies of

ERISA as a whole.[3] Being guided by this third consideration, the Court in *Pilot Life* found that the intent of Congress was to establish a comprehensive, exclusive scheme of recovery for injured parties under ERISA, and that inconsistent schemes of recovery were preempted. This Court will make its determination on the preemption issue using the same interpretational tools employed by the Supreme Court in *Pilot Life*. First, according to the *Pilot Life* Court, a common sense understanding of the phrase "regulates insurance" requires that a law be "specifically directed" toward the insurance industry. *See Pilot Life*, 107 S.Ct. at 1554. Using this standard, the Court finds that the Texas DTPA is not "specifically directed" toward the insurance industry. The DTPA is a broad remedial provision which prohibits deceptive trade practices generally. To qualify as a plaintiff under the DTPA, a party must merely establish status as a "consumer" of a "good" or "service," as defined by the Texas Business and Commerce Code §§ 17.46, 17.50. Although the DTPA may be applicable to deceptive trade practices within the insurance industry, it does not appear to be directed toward any specific industry exclusively.[4] Thus, the Court finds that the DTPA is not "specifically directed" to the insurance industry for purposes of this analysis.

Plaintiffs argue that the DTPA is specifically directed toward the insurance industry because article 21.21 of the Texas Insurance Code is incorporated into the DTPA. *See* TEX.BUS. & COM.CODE § 17.50(a)(4); *Vail v. Texas Farm Bureau Mutual Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1988). The fact that article 21.21 of the

---

**1.** In *Boren v. N.L. Industries, Inc.*, 889 F.2d 1463 (5th Cir.1989), the Fifth Circuit held that the Texas DTPA was preempted by ERISA, but it is not clear whether the savings clause issue was raised. This Court will, therefore, undertake that issue.

**2.** The McCarran–Ferguson Act provides, in relevant part: "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).

**3.** The Court stated, " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Pilot Life*, 107 S.Ct. at 1555.

**4.** As will be discussed *infra,* The McCarran–Ferguson analysis requires that the regulation be limited to entities within the insurance industry. *See Pilot Life*, 107 S.Ct. at 1554.

Texas Insurance Code is incorporated into the DTPA is not dispositive since the Fifth Circuit has ruled that article 21.21 does not fall within the savings clause. Moreover, even if the DTPA can be said to be "specifically directed" toward the insurance industry, it fails under the second and third methods of interpretation outlined in *Pilot Life*.

The second interpretational tool used in *Pilot Life* compels the Court to look to case law interpreting the phrase "business of insurance" as it is used in the McCarran–Ferguson Act. Three criteria have been used to determine whether a practice falls under the "business of insurance" for purposes of the McCarran–Ferguson Act: (1) "whether the practice has the effect of transferring or spreading a policyholder's risk;" (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured;" and (3) "whether the practice is limited to entities within the insurance industry." *See Pilot Life, id.* 107 S.Ct. at 1554–54.

With respect to the first criterion, the Court is of the opinion that the DTPA does not have a regulatory effect on the transferring or spreading of a policyholder's risk. In the court's view, transferring or spreading of a policyholder's risk involves the substantive terms or conditions of insurance policies. The DTPA does not prescribe the substantive terms or conditions of insurance policies, it merely prohibits deceptive trade practices generally and addresses the remedies available for those injured by violations of those statutes.

Second, the DTPA is not an "integral part" of the policy relationship between the insurer and the insured. This follows from the fact that it does not prescribe the terms or conditions of insurance policies. In *Pilot Life*, the Court held that the Mississippi common law of bad faith was not an "integral part" of the policy relationship between the insurer and the insured because the availability of punitive damages did not so much define the terms of the relationship between the insurer and the insured as it provided that in the event of a breach of those terms, the insured may be able to obtain punitive damages. Similarly, the DTPA is not an "integral part" of the policy relationship between the insurer and the insured because it does not so much define the terms of the relationship between the insurer and the insured as it provides that in the event the insured is injured by a deceptive trade practice, he may be able to recover punitive damages. *Id.*

The third criterion under the McCarran–Ferguson analysis is whether the practice is limited to entities within the insurance industry. The Court has already found that the DTPA is a broad remedial provision of general applicability and is not limited to entities within the insurance industry.

Finally, the Court is of the opinion that the DTPA fails to measure up under the most important consideration relied on by the Supreme Court in *Pilot Life*, that being Congress' intent to establish in ERISA a scheme of recovery that is uniform, comprehensive and exclusive. 107 S.Ct. at 1555. In *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985), the Court held that by providing no express authority for an award of punitive damages to a beneficiary under ERISA, Congress deliberately intended to exclude it as a remedy in its comprehensive scheme of recovery. In *Pilot Life*, the Court reiterated the point by stating:

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Pilot Life*, 107 S.Ct. at 1556. The *Pilot Life* Court held that to allow injured parties to recover under the common law of bad faith would be inconsistent with the intent of Congress in establishing a uniform, exclusive recovery scheme under ERISA. Similarly, being guided by the objectives and policies of Congress in ERISA, this Court is of the opinion that to

allow injured parties to file complaints under the DTPA would be inconsistent with the intent of Congress in establishing a uniform, exclusive recovery scheme under ERISA.

Plaintiffs also argue that ERISA does not preempt their claims because "the actions questioned in this case are not those of a fiduciary, but those of a non-fiduciary deciding whether or not to grant a claim." Plaintiffs' argument is inconsistent with the underlying basis of their lawsuit. The term "fiduciary" is defined in 29 U.S.C. § 1002(21)(A) to include persons who, with respect to an employee benefit plan, "[exercise] any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control regarding management or disposition of its assets." Thus, a person is a fiduciary if that person has discretion in deciding whether claims are to be paid or establishes the policies and procedures to be followed in evaluating claims. *See e.g., Simmons v. Prudential Insurance Co. of America*, 641 F.Supp. 675, 678 (D.Colo.1986). Conversely, persons who provide only ministerial or actuarial services are not fiduciaries. *See e.g., Munoz v. Prudential Ins. Co. of America*, 633 F.Supp. 564, 568 (D.Colo.1986).

In claiming that Defendants unlawfully denied Plaintiffs' benefits, Plaintiffs implicitly acknowledge that Defendants had the authority and discretion to determine whether Plaintiffs' claims should be paid. Plaintiffs cannot now be heard to argue that those with the authority to pay or deny their claims are not fiduciaries as defined by ERISA. The Court, therefore, rejects this argument.

The Court finds that neither article 21.21 nor the DTPA fall within the savings clause and are, therefore, preempted by ERISA.[5] In a previous opinion, this Court held that claims brought under article 21.21

are not preempted by ERISA. *See Mayfield v. Hartford Life Insurance Co.*, 699 F.Supp. 605 (W.D.Tex.1988). The Court hereby disapproves of and withdraws that opinion.

Because Plaintiffs have alleged no other causes of action which are not preempted by ERISA, namely a claim under ERISA itself, Plaintiffs' complaint is DISMISSED.

ACCORDINGLY, IT IS ORDERED, that Defendants' Motion to Dismiss is GRANTED, the Motion to Remand is DENIED and the Motion to Compel Arbitration is DENIED as MOOT.

---

5. Plaintiffs also allege violations of Texas Insurance Code chapter 20A, commonly referred to as the "HMO Act." Although the HMO Act is incorporated in the state's insurance code, a company need not even be an insurance carrier in order to provide HMO coverage. *See* TEX.

INS.CODE ANN. art. 20A.02(i) and (*l*) and 20A.04. The Court is, therefore, of the opinion that the HMO Act is not "specifically directed" at the insurance industry and does not fall within the savings clause of ERISA.